Filed 5/12/14  Silber v. Hanover Builders CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| REAGAN SILBER, | B246975 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC105924) |
| v. | |
| HANOVER BUILDERS, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Reversed.

Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, Amir H. Alavi, Alisa Lipski and Jane L. Robinson, for Plaintiff and Appellant.

Northrup Schlueter, Linda L. Northrup and Melissa M. Barcena, for Defendant and Respondent Hanover Builders.

The Morrison Law Group and Edward F. Morrison, Jr., for Defendant and Respondent Eberhard.

Waters, McCluskey & Boehle and Michael T. Montgomery, for Defendant and Respondent Westoaks Glass and Mirror.

Lewis Brisbois Bisgaard & Smith, Charles L. Harris and Stephen L. Culp, for Defendant and Respondent Ultimate Metal Productions.

_____

After selling his home, Reagan Silber was sued for making intentional misrepresentations on a real estate transfer disclosure form. An arbitrator found Silber failed to inform the purchaser that numerous prior water intrusions had occurred at the property. The purchaser was awarded damages, which included the costs of repairing existing leaks and structural defects caused by the water intrusions. After the award was judicially confirmed, Silber filed an indemnity action against several subcontractors who had been hired to repair the property prior to its sale. The subcontractors demurred, arguing the arbitrator's finding that Silber had deceived the purchaser barred any subsequent claim for indemnification. The trial court sustained the demurrer without leave to amend and entered a judgment in favor of the subcontractors. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Arbitration

In January of 2006, Reagan Silber sold his private residence located in Bel Air, California. In connection with the sale, Silber provided the purchaser a "Real Estate Transfer Disclosure Statement" representing that he was not aware of any "leaks" or "water intrusion into any part of any physical structure on the property." The disclosure statement also indicated Silber was not aware of any "recurring maintenance on the [p]roperty"; "[a]ny past defects in . . . drainage"; or "[a]ny alterations, modification, replacements or material repairs to the property."

After the close of escrow, the purchaser began renovating the property and discovered extensive water damage throughout the residence. A subsequent investigation revealed numerous defects, including, among other things: 55 "leaks" into the residence; "water intrusion and damage to various interior areas"; "ponding and deterioration within the roof"; water damage to the electrical system; and severe wood rot in the exterior decks. Following the investigation, the purchaser sent Silber a letter demanding that he accept rescission of the sales contract "[i]n light of . . . misrepresentations made [on the disclosure statement]." Silber refused to rescind the sale and the matter was referred to arbitration.

2

Silber's personal assistant, Christine Stafford, testified at the arbitration. Stafford reported that, during the winter of 2005, she had repeatedly seen substantial amounts of water leaking into numerous parts of the residence.[1] Stafford, who was responsible for managing the property, hired ARYA Architect and Builders to address the water issues. In January of 2005, Stafford sent an email to ARYA and Silber describing numerous "major leaks" that had caused water damage throughout the home. Stafford's email stated that she was concerned the water intrusion issues would require more than "a simple patch up," and requested that Silber and ARYA schedule a conference call to "execute a proper and complete action plan to fix this once and for all." Several days later, Silber sent ARYA a text message stating that there was a "major water problem at the house" and that he could hear "a massive amount of water . . . swishing behind the walls."

Silber's groundskeeper testified the "house leaked 'every time it rained.'" He also stated that he had seen ARYA "crews attempt numerous leak repairs around the home, the last [of] which was 'around the end of 2005.'" The groundskeeper recalled that, on one occasion, Silber had joked to him that the house was worth over $20 million, but had to be "covered with plastic" every time it rained.

Additional evidence at the arbitration showed that, early in 2005, Silber asked ARYA to "prepare the house for sale." In March of 2005, ARYA informed Silber it had repaired 21 items listed in a prior inspection report, which included "fixing a leak in the office and powder room, another leak at the east of the garage, installing drains for the garage and the roof, . . . and cleaning the leaks in the master bath and library." In response, Silber sent ARYA a message stating: "Thanks for the update. Does this mean

---

**1**    The arbitrator's preliminary award vividly describes the extent of these leaks: "Water appeared in the home's foyer, master bedroom and bath. It stole into the media room, Stafford's office and the garage. It trickled down the insides of window panes, it slid down a shower door. It crept under a glass door in the study and it loosened the bright leather wall cover in [Stafford's] powder room. It invaded the air conditioning ducts, where it sloshed disturbingly as it circulated through the system. It bled into the house through the wall of an outside mechanical room and it ponded upon the roof."

that EVERYTHING that can be done (to make the house weatherproof AND perfect for showing beginning next week) has been done with the exception of the scratch to the front gate?"

Silber's real estate agent testified that, prior to the sale, ARYA had "assured him" all leaks had been fixed and that the house was "perfect." The real estate agent further testified that, as a courtesy to Silber, he had filled out the disclosure statements and then forwarded them to Silber for his review and signature.

On March 31, 2008, the arbitrator issued a preliminary award in favor of the purchaser. According to the arbitrator, the evidence clearly showed Silber was aware of the water intrusion issues prior to the sale and that his responses on the disclosure statement "were not truthful." The arbitrator rejected Silber's assertion that he could not be held liable because he "believed [all defects] had been repaired." The arbitrator explained that even if Silber thought ARYA had repaired all the water-related issues, he had "sign[ed] the [disclosure] forms . . . recklessly without reasonable grounds to believe they were true," and with the intent "to induce the buyer to act upon them." The arbitrator did, however, find there was insufficient evidence to show Silber had committed fraud or made any intentional misrepresentations.

The arbitrator awarded the purchaser approximately $2.65 million in compensatory damages that were "causally related to the misstatements on the seller disclosure form." The damages included, among other things, the costs of "waterproofing" the residence; "roofing repairs"; installing a "new electrical system" and constructing a "new exterior deck." In a subsequent ruling on "post-arbitration motions," the arbitrator awarded the purchaser an additional $1.25 million in attorneys fees and $850,000 in punitive damages.[2] On July 2, 2008, the arbitrator entered his final award, which the superior court confirmed in August of 2008.

---

[2] At the punitive damages hearing, Silber argued the arbitrator's finding that he did not commit fraud or intentional misrepresentation precluded the award of any punitive damages. The arbitrator, however, ruled that Silber's "reckless" conduct was sufficient

4

## B. Silber's Complaint

In December of 2009, Silber filed an action seeking indemnification from ARYA for the amount he was required to pay at the arbitration. The complaint alleged Silber had retained ARYA to "address and fix . . . issues with the residence, including water intrusion problems and damage." Silber later instructed ARYA "to do whatever [was] necessary to restore the residence to perfect condition in anticipation of a sale . . . in early 2006." ARYA "assured" Silber the "residence was in perfect condition, and could be marketed and sold as such." However, shortly after the sale was completed, the purchaser "demanded arbitration against [Silber] alleging, among other matters, that the home suffered from various construction defects and other issues, including numerous instances of water intrusion, leaks, and water damage." The complaint alleged that although ARYA had been "retained and requested to make all necessary repairs, and . . . been paid millions to do just that, ARYA did not perform as it promised or agreed, and misrepresented the condition of the residence . . . Accordingly, [Silber] seeks to recover for his substantial damages . . . rendered against him in the arbitration."

In May of 2012, Silber filed a second amended complaint that added a contractual indemnity claim against several subcontractors ARYA had hired to work on the residence. The amended complaint alleged each subcontractor had executed a contract with ARYA containing a clause stating: "To the fullest extent possible by law, Subcontractor shall indemnify and hold harmless Owner and Contractor . . . from claims . . . and liabilities of every kind . . . (including attorneys fees and costs incurred in defense of same) arising out of or in connection with Subcontractors operations performed under this Agreement . . . The indemnity shall apply regardless of any active and/or passive negligent act or omission of Owner and Contractor . . ., but Subcontractor shall not be

---

to support a punitive damages award. The arbitrator did, however, award substantially less in punitive damages than the purchaser had requested based on "mitigating" evidence showing that Silber "asked [ARYA] to do 'everything to make the house weatherproof and perfect."

5

obligated to indemnify any party for claim [*sic*] arising from the sole negligence or willful misconduct of Owner or their agents."

The complaint stated that, "pursuant to th[e] indemnity agreement," Silber was seeking compensation from the subcontractors for "the amounts paid as a result of the arbitration claim as well as his own attorneys fees and costs incurred to defend the arbitration claim."

### C. Subcontractors' Demurrers

Two of the subcontractor defendants, Hanover Builders and Ebherhard, filed demurrers that were joined by five other subcontractor defendants (collectively subcontractors).[3] The subcontractors argued Silber's claim was precluded by Civil Code section 2782, subdivision (a), which prohibits agreements in construction contracts that "purport to indemnify the promisee against liability or damages . . . arising from the sole negligence or willful misconduct of the promisee." The subcontractors asserted that the arbitrator had found that the damages for which Silber was seeking indemnification (the amount of the arbitration award) were solely the result of his own negligence or willful misconduct: withholding information on the real estate disclosure statement. The subcontractors further asserted that, under the doctrine of res judicata, Silber was precluded from re-litigating whether he had made willful misrepresentations that were the sole cause of the damages awarded in the arbitration.

In opposition, Silber argued that, under the Supreme Court's holding in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 (*Vandenberg*), a private arbitration award is not entitled to collateral estoppel effect in favor of nonparties to the arbitration. Although Silber recognized *Vandenberg* did not affect the claim preclusion effect of an arbitration award, he contended that the arbitration and his indemnity action did not

---

**3** Eberhard filed its demurrer on June 25, 2012 and Hanover Builders filed its demurrer on September 5, 2012. James H. Cowan & Associates, Ultimate Metal Production, Pyramid Plastering, Hermosa Terrazzo, and Westoaks Glass and Mirror joined in one or both the demurrers. Subcontractor D.J. Scheffler also filed a demurrer, but was subsequently "voluntarily dismissed from the case by . . . Silber."

6

involve the same cause of action. Silber also argued that even if he was precluded from re-litigating issues decided in the arbitration, the arbitrator had not resolved whether the purchaser's damages were caused "solely" by Silber's conduct. Rather, according to Silber, the arbitrator had merely found his misrepresentations were "causally related" to the purchaser's damages.

Following a hearing, the court issued an order sustaining the subcontractors' demurrers without leave to amend. The court concluded that, under principles of res judicata, Silber's "express indemnity claim [was] barred by the arbitrator's finding coupled with the language of . . . Civil Code § 2782." The court explained the demurrer raised two issues: (1) whether Silber was precluded from re-litigating factual issues that had been decided in the arbitration; and (2) whether the arbitrator had found the purchaser's damages were solely the result of Silber's negligence or willful misconduct, and therefore not subject to indemnification pursuant to Civil Code section 2782.

On the first issue, the court found the arbitrator's "award preclude[d] relitigating the issues [decided in that proceeding]." The court explained that *Vandenberg's* limitation on the collateral estoppel effect of private arbitration awards was inapplicable where "the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts." The court further explained this exception to the *Vandenberg* rule applied here because Silber was "attempting to hold the subcontractors liable in express indemnity based on the arbitration award . . . The sole theory of liability against the new subcontractor defendants is derivative of the arbitration award. Therefore the court may properly consider whether plaintiff's express indemnity claim is barred by the arbitrators finding[s] . . . ."

On the second issue, the court concluded the arbitration award made clear that "the damages set forth therein were caused by [Silber's own] failure to disclose." In support, the court quoted language from the award stating that the arbitrator had determined the damages it was awarding were "'causally related to the misstatement on the seller's disclosure forms . . . .'" The trial court concluded such statements showed Silber was

7

seeking indemnity for damages that had been caused by his own willful conduct in violation of section 2782.

On November 28, 2012, the trial court entered a judgment in favor of the seven subcontractors that had either filed or joined in a demurrer. Silber filed a timely appeal.

## DISCUSSION

Silber argues the trial court erred in dismissing the portion of his contractual indemnity claim seeking repayment of the compensatory damages, attorney's fees and costs awarded in the underlying arbitration.[4] Silber contends the trial court made two errors. First, he asserts the court erred in concluding a private arbitration may have collateral estoppel effect in favor of a nonparty to the arbitration. Second, he contends the trial court erred in concluding that the arbitrator found the purchaser's damages were caused "solely" by Silber's misrepresentations, thereby triggering the prohibition set forth in section 2782.

### A. Standard of Review

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties." [Citation]" (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 557-558.) "[A] demurrer based on res judicata is properly sustained only if the pleadings and judicially noticed facts conclusively establish the elements of the doctrine. [Citation]."

---

**4** Silber is not seeking indemnification for the $850,000 in punitive damages awarded in the arbitration.

(*Planning and Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 231.)[5]

## B. Summary of Applicable Law

"The doctrine of res judicata is composed of two parts: claim preclusion and issue preclusion. Claim preclusion prohibits a party from relitigating a previously adjudicated cause of action; thus, a new lawsuit on the same cause of action is entirely barred. [Citation.] Issue preclusion, or collateral estoppel, applies to a subsequent suit between the parties on a different cause of action. Collateral estoppel prevents the parties from relitigating any issue which was actually litigated and finally decided in the earlier action. [Citation.] The issue decided in the earlier proceeding must be identical to the one presented in the subsequent action. If there is any doubt, collateral estoppel will not apply." (*Flynn v. Gorton* (1989) 207 Cal.App.3d 1550, 1554 (*Flynn*).) "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." (*Brinton v. Bankers Pension Services, Inc*. (1999) 76 Cal.App.4th 550, 556 (*Brinton*).)

In *Vandenberg, supra,* 21 Cal.4th 815, the California Supreme Court considered whether "private contractual arbitration decisions may have collateral estoppel effect in favor of nonparties." (*Id*. at p. 827.) The plaintiff in *Vandenberg* leased property that he

---

[5] Generally, when a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In this case, Silber has argued only that his second amended complaint properly states an indemnification claim against each of the subcontractors; he has not offered any possible amendment. Accordingly, the only issue in this appeal is whether the current version of the operative complaint adequately states a claim against the subcontractor defendants.

used to operate an automobile service facility. After the lease terminated, the property owner filed an action alleging that oil seeping from plaintiff's underground storage tanks had caused petroleum contamination in the soil. Plaintiff's insurance policies only covered pollution-related damages that were caused by a "'sudden and accidental'" discharge. Several of plaintiff's insurers refused to provide a defense, contending that oil leakage from storage tanks was not "sudden." Plaintiff and the property owner thereafter agreed to arbitrate whether the contamination of the property constituted a breach of the lease. The arbitrator entered an award in favor of the property owner finding, among other things, that the contamination was caused by plaintiff and that the discharge of contaminants had not been sudden or accidental.

After the award was judicially confirmed, plaintiff filed an indemnification action against his insurers seeking repayment of the arbitration award. The insurers moved for summary judgment, arguing they had no duty to "indemnify because the pollution exclusion in their policies was triggered by the arbitrator's determination . . . the contamination was not sudden and accidental. [The] insurers contended that [plaintiff's] relitigation of the 'sudden and accidental' issue was precluded by principles of collateral estoppel." (*Vandenberg, supra*, 21 Cal.4th at p. 827.) The trial court granted the motion, ruling that "relitigation of issues regarding the source and causation of the contamination was precluded by collateral estoppel." (*Ibid*.) The Court of Appeal reversed the order.

The Supreme Court affirmed, concluding that "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case , that such a consequence should apply." (*Vandenberg, supra*, 21 Cal.4th at p. 834.) In its analysis, the Court emphasized "the contractual basis of private arbitration, i.e., the principle that the scope and effect of the arbitration are for the parties themselves to decide." (*Id*. at pp. 833-834.) The Court explained that "[a]n agreement to arbitrate particular claims reflects each party's conclusion that the immediate stakes make it preferable to avoid the delay and expense of court proceedings, and instead to resolve the matter between themselves without resort to the judicial process. Under such circumstances, each party is willing to risk that the

10

arbitration will result in a 'final' and 'binding' *defeat* with respect to the *submitted claims*, even though the party would have won in court, and even though the arbitrator's errors must be accepted without opportunity for review. [Citation.] But this does not mean each arbitral party also consents that issues decided against him by this informal, imprecise method may bind him, in the same manner as a court trial, in *all future* disputes, *regardless* of the stakes, against all adversaries, known and unknown." (*Id.* at p. 832.)

After announcing it was "adopt[ing] . . . the rule that a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree" (*Vandenberg, supra*, 21 Cal.4th at pp. 836-837), the Court applied the "rule to the facts before [it]," stating: "[None of the insurers] was a party to the arbitration between [plaintiff] and [the property owner]. Moreover, [plaintiff's] current insurance coverage claims against [the insurers] are entirely distinct from the breach of lease claims decided in favor of [the property owner], and against [the plaintiff], in the [underlying] arbitration. Hence, [the insurers] seek to give the arbitrator's decision nonmutual collateral estoppel effect against [plaintiff]. They may not do so unless [plaintiff] and [the property owner] so agreed." (*Id.* at p. 837.)

In a footnote, however, the Court clarified that its decision was not intended to "impose[] or impl[y] any limitations on the strict res judicata, or 'claim preclusive,' effect of a California law private arbitration award." (*Vandenberg, supra*, 21 Cal.4th at p. 825, fn 2.) This statement was accompanied by citations to two prior appellate court decisions: *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749 (*Thibodeau*) and *Sartor v. Superior Court* (1982) 136 Cal.App.3d 322. In a parenthetical, the Court described *Thibodeau* as having held that a private arbitration between a homeowner and a general contractor "bar[red] homeowner's identical claim against [a] subcontractor." (*Vandenberg, supra*, 21 Cal.4th at p. 825, fn. 2.) The Court provided a similar parenthetical for *Sartor*, stating that the case held an arbitration between a homeowner and an architectural firm barred the "homeowner's identical causes of action against [the architectural] firm's employees." (*Ibid.*)

11

Several subsequent decisions applying *Vandenberg* have permitted a private arbitration to have a claim preclusive effect in favor of a nonparty to the arbitration, but not a collateral estoppel (issue preclusive) effect. For example, in *Brinton, supra,* 76 Cal.App.4th 550, a plaintiff arbitrated fraud claims against his securities broker, Ronald Thon, that were predicated on a series of failed investments. After an arbitration panel ruled in favor of Thon, the plaintiff filed a complaint against Thon's employer asserting essentially identical claims that were predicated on the same failed investments. The trial court ruled the claims were precluded under principles of res judicata, but failed to state whether it had proceeded under claim preclusion or issue preclusion.

The appellate court began it its analysis by explaining that, under *Vandenberg*, "the issue preclusion aspect of the res judicata doctrine cannot support the trial court's decision . . . This leaves the question whether the res judicata doctrine's claim preclusion rule supports the trial court's decision. As *Vandenberg* recognized, a prior judgment confirming an arbitration award may bar a subsequent lawsuit on the same cause of action." (*Brinton, supra*, 76 Cal.App.4th at pp. 556-557.) The court then applied "the primary rights theory to determine if [the] two successive proceedings involve[d] the same cause of action. [Citations.]" (*Id*. at p. 557.) The court concluded the arbitration claim and the present law suit sought "recovery for the same injury[:] . . . financial losses [that were allegedly caused by] Thon's purported misrepresentations concerning the character of the investments." (*Ibid*.) The court further explained that although Thon's employer was not a party to the original matter, it was nonetheless permitted to assert a claim preclusion defense based on principles of derivative liability: "Defendant was not a party to the arbitration proceeding. But since defendant's liability is merely derivative of Thon's, it is unnecessary for defendant to have been a party to the prior action to assert a claim preclusion defense in this case." (*Id*. at pp. 557-558.)

*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566 (*LeVine*), which was decided several years after *Brinton*, reached a similar holding. The plaintiff in *LeVine* initiated an arbitration proceeding against his medical partnership alleging that it had wrongfully withheld the distribution of certain profits. After the arbitrator ruled

against the plaintiff, he filed an action against the partnership's accountant. Plaintiff alleged the accountant had conspired with the partnership to wrongfully withhold the same profits at issue in the arbitration. The trial court granted the accountant's motion for summary judgment, ruling that the "awards in the arbitration proceeding between plaintiff [and the partnership] . . . estopped plaintiff from proceeding on the conspiracy claim." (*Id*. at p. 573.)

The appellate court affirmed, holding that "claim preclusion" provided a "complete defense to the claim for civil conspiracy." (*LeVine, supra,* 131 Cal.App.4th at p. 573.) The court began by explaining that, under "the . . . principle[s] applicable to . . . civil conspiracy," the accountant's "liability depend[ed] upon the actual commission of a tort. . . . [¶] Unless plaintiff's [partnership] committed the underlying tort alleged here, i.e., breach of fiduciary duty, [the accountant] cannot be held liable either as a conspirator or as an aider and abettor." (*Id*. at p. 575.) The court next assessed "whether the findings of the arbitrator must be given preclusive effect in the instant action brought against [the accountant]." (*Ibid.*) As in *Brinton*, the court applied the "primary right theory" and concluded  plaintiff's causes of action against the accountant and the partnership were "identical[:] . . .[¶]  The primary right asserted in the arbitration against the [partnership] was the right to be free of the wrongful diversion of plaintiff's rightful share of partnership profits . . . The instant conspiracy . . . claim against defendant[] asserts the identical primary right. Thus plaintiff's claim against the [partnership] is identical to its claim against defendant[]." (*Id*. at pp. 575-576.)

The court further explained that although *Vandenberg* "held that arbitration awards do not support nonmutual collateral estoppel" (*LeVine, supra,* 131 Cal.App.4th at p. 576), the decision had specifically approved of prior cases holding that "a claim preclusion defense" (*id.* at p. 578) was available where the prior "arbitration award[] . . . eliminate[s] the basis for [the] non-arbitrating party's derivative liability." (*Id*. at p. 575.) The court clarified that, for the purposes of claim preclusion, claims brought against two different parties may nonetheless be treated as "identical" based on the "derivative nature of the liability." (*Id.* at p. 578.)

13

Finally, in *Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96 (*Benasra*), the court addressed "whether a claim for breach of duty of loyalty against the claimants' former attorneys for representing an opposing party in an arbitration should be foreclosed on res judicata grounds where the claimants had previously submitted an unsuccessful motion to disqualify to the arbitration panel." (*Id.* at p. 99.) Plaintiffs were former licensees of the designer "Guess." After the parties' relationship deteriorated, Guess initiated an arbitration to terminate the licensing agreement. During the arbitration, plaintiffs filed a motion to disqualify Guess's attorney, Mitchell Silberberg & Knupp, based on the firm's prior representation of plaintiffs in various related matters. The arbitration panel denied the request.

The plaintiff then filed a suit against Mitchell Silberberg alleging the firm had violated rule 3-310(C) of the California State Bar Rules of Professional Conduct by agreeing to represent Guess in the underlying arbitration. Mitchell Silberberg filed a motion for summary judgment arguing that the arbitrator's denial of plaintiff's motion to disqualify precluded their current claim. The trial court "ruled that [plaintiffs'] claims against [Mitchell Silberberg] were 'barred by the doctrine of res judicata,'" because the "'conflict asserted by [plaintiffs] as the basis of their complaint, was . . . finally decided in the underlying arbitration proceedings.'" (*Benasra, supra,* 96 Cal.App.4th at pp. 103-104.)

On appeal, the court explained that, under *Vandenberg*, "an arbitration decision could have no collateral estoppel effect on later litigation, [but] . . . recognized that claim preclusion was a different matter." (*Benasra, supra,* 96 Cal.App.4th at p. 107.) Thus, according to the court, "the crucial issue [was] . . . whether the arbitrators' denial of the motion to disqualify was properly asserted as a complete bar to the present action for breach of duty of loyalty, or whether the trial court improperly used the arbitration panel's determination of a legal or factual issue for collateral estoppel purposes in violation of *Vandenberg*." (*Id.* at p. 108.)

In applying this analytical framework, the court rejected Mitchell Silberberg's contention that plaintiffs had "asserted the same violation of the same primary right that

14

they asserted in the [a]rbitration – the purported right to [defendant's] undivided loyalty and confidentiality." (*Benasra, supra,* 96 Cal.App.4th at p. 109.) The court explained that Mitchell Silberberg had "overlook[ed] an important step. Before we can compare the present claim with the claim or cause of action asserted in the first forum, we must identify the cause of action or claim asserted there." (*Ibid.*) The court further explained that the parties' "arbitration involved claims and counterclaims between [plaintiffs] and Guess, which were disputing product-licensing agreements. The question of whether a conflict prevented Guess's attorneys of choice . . .from representing Guess in the arbitration was raised as an ancillary or collateral issue." (*Ibid.*) The court concluded that because the motion to disqualify related to a single, ancillary issue raised in the arbitration, it could not have a collateral estoppel effect in the subsequent proceedings involving a nonparty to the arbitration.

### C. The Trial Court Erred in Concluding the Arbitration Award Precluded Silber from Asserting an Indemnification Claim Against the Subcontractors

In this case, the trial court ruled the doctrine of res judicata "preclude[d] [Silber from] relitigating" whether his own willful misconduct caused the damages awarded in the arbitration. The court agreed with the subcontractors' assertion that although a private arbitration generally has no collateral estoppel effect on non-arbitrating parties, *Brinton* and *LeVine* recognized an exception to this rule where the defendant's liability in the subsequent proceeding derives from the arbitration award. The court then applied this purported exception because Silber was "attempting to hold the subcontractors liable in express indemnity based on the arbitration award."

The trial court erred in accepting the subcontractors' assertion that a private arbitration may have collateral estoppel effect in favor of a nonparty where the liability sought in the subsequent proceeding derives from the arbitration award. As *Brinton*, *LeVine* and *Benasra* make clear, *Vandenberg* established a bright-line rule that "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a

15

consequence should apply." (*Vandenberg, supra,* 21 Cal.4th at p. 834.) Although *Vandenberg* clarified that a private arbitration award may be entitled to nonmutual claim preclusive effect, the decision broadly proclaimed that, "for California purposes, . . . a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree." (*Id.* at pp. 836-837.)

The facts of this case are essentially identical to *Vandenberg*. Like the plaintiff in *Vandenberg*, Silber was found liable in an arbitration and then sought indemnification for the award from parties who had not participated in the arbitration. Moreover, as in *Vandenburg*, Silber's current claim for contractual indemnity claim against the subcontractors is entirely distinct from the misrepresentation claim decided in favor of the purchaser, and against Silber, in the underlying arbitration. Hence, the subcontractors seek to give the arbitrator's decision nonmutual collateral estoppel effect against Silber. They may not do so unless Silber and the purchaser so agreed. It is undisputed that the record contains no evidence of any such agreement.

Contrary to the trial court's findings, neither *Brinton* nor *LeVine* recognized or established an exception to *Vandenberg* where a party to the arbitration subsequently asserts claims against a non-arbitrating party that seek to impose liability that derives from the arbitration award. Both cases merely held that an arbitration may have a nonmutual claim preclusive effect (as opposed to collateral estoppel effect) where the "arbitration award[] . . . eliminate[s] the basis for [the] non-arbitrating party's derivative liability." (*LeVine*, *supra*, 131 Cal.App.4th at p. 578; see also *Brinton, supra*, 76 Cal.App.4th at pp. 557-558.) Stated differently, a non-party to the arbitration may assert claim preclusion as a defense if his or "'liability . . . is dependent upon or derived from the liability of one who was exonerated in an earlier arbitration brought by the same plaintiff upon the same facts' [Citation.]" (*LeVine*, *supra*, 131 Cal.App.4th at p. 578.) As explained in *Brinton* and *LeVine*, this situation arises when a plaintiff has arbitrated and lost against a principal or direct tortfeasor, and then seeks to relitigate the same claim against a different party under a theory of "derivative liability," including, for example, respondent superior, agency or conspiracy. (*Id.* at pp. 578-579.)

16

That is not the situation here. Silber was not the plaintiff in the arbitration nor does his indemnity claim seek to impose liability on the subcontractors that derives from the liability of the party exonerated at the arbitration (the purchaser). Silber's claim asserts only that he is entitled to indemnification for the portion of the arbitration award that resulted from the subcontractors' failure to adequately complete the repairs they were hired to perform. The arbitration award did not address those issues; instead, it determined only whether Silber had made misrepresentations regarding the residence and amount of damages that were "causally related" to those misrepresentations. ."

The subcontractors, however, contend that even if the trial court erred in relying on the collateral estoppel aspect of res judicata and misapplied *LeVine* and *Binton*, we may nonetheless affirm its ruling under the claim preclusion aspect of the res judicata doctrine because both proceedings involve the same cause of action. (See *Brinton, supra,* 76 Cal.App.4th at pp. 556-557 ["As *Vandenberg* recognized, a prior judgment confirming an arbitration award may bar a subsequent lawsuit on the same cause of action"].) We disagree.

"California employs the primary rights theory to determine if two successive proceedings involve the same cause of action. [Citation.]" (*Brinton, supra*, 76 Cal.App.4th at p. 557-558.) "Under this theory, a 'cause of action' is comprised of a primary right possessed by the plaintiff, a corresponding duty imposed upon the defendant, and a wrong done by the defendant which is a breach of such primary right and duty. [Citation.] The primary right is the plaintiff's right to be free of the particular injury, regardless of the legal theory on which liability is premised or the remedy which is sought. [Citation.] Thus, it is the harm suffered that is the significant factor in defining the primary right at issue." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228-229.)

Applying the "primary rights theory" here, it is apparent the arbitration and the indemnity action do not involve the same cause of action. In the arbitration, the purchaser asserted deceit claims (fraud and misrepresentation) arising from untruthful information set forth in Silber's real estate transfer disclosure statement. These claims

17

alleged the purchaser suffered harm as the result of Silber's misrepresentations about the condition of his residence. Silber's indemnity action, in turn, sought contractual indemnification for damages he incurred as a result of the subcontractors' failure to complete the repairs they were allegedly hired to perform. Thus, the primary right at issue in the arbitration was the right to be free from injury caused by Silber's deception; the primary right at issue in the indemnity action was Silber's right to be free from harm caused by the subcontractors' inadequate performance of their contractual duties. Accordingly, claim preclusion is inapplicable.[6]

Having concluded the trial court erred in finding the arbitration award had a res judicata effect on Silber's indemnity claim, we need not address Silber's alternative contention that collateral estoppel was inapplicable because the arbitrator did not actually or necessarily decide whether the purchaser's damages were caused "solely" by his misrepresentations on the disclosure statements. (See *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 398-399 [issue preclusion applies only if the issue was "actually litigated" and "necessarily decided in the former proceeding"]; *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction* Co. (1991) 234 Cal.App.3d 1724, 1737-1738 [under Civil Code section 2782, "indemnity clauses in a construction contract may not provide indemnification for injury or loss due to the indemnitee's sole negligence or sole willful

---

[6]     We reject the subcontractors' assertion that the "primary right" at issue in both the arbitration and the indemnity action "is the right to have a home free of water intrusion, leaks and defects." The primary right at issue in the arbitration was not the purchaser's "right" to receive a home free from water intrusion; it was his right to receive truthful responses on the real estate transfer disclosure statement. As explained by the arbitrator, if Silber had provided truthful responses on the disclosure statement, the purchaser would have had an opportunity to conduct a "further investigation [of the residence] or . . . renegotiate the price." Likewise, the primary right at issue in the indemnity action was not Silber's right to have a home free of water intrusion. Rather, it was Silber's contractual right to be compensated for any damages he incurred as the result of the subcontractors failure to complete whatever work they were hired to perform.

18

conduct; . . . [The section] does not . . .prohibit agreements for indemnification when the loss or injury is due only in part to the indemnitee's . . . willful misconduct"].)[7]

**DISPOSITION**

The judgment is reversed.  Respondent shall recover his costs on appeal.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.[*]

---

[7]    In the introductory section of its appellate brief, Hanover Builders states that even if the court erred in applying the res judicata doctrine, Silber's indemnity claim is nonetheless precluded by the statute of limitations.  However, the only legal analysis of this issue is set forth in a footnote on the final page of the brief.  The footnote argues Silber's claims are precluded by the four year statute of limitations set forth in Code of Civil Procedure section 337.1 because he was aware of "leaking or water intrusion" more than four years before he filed his indemnity claim.  The trial court rejected this argument, concluding Silber's indemnity claim did not accrue until he paid the underlying arbitration award, which occurred within four years of filing the current action.  We decline to consider Hanover's statute of limitation argument, which appears only in a footnote and contains no discussion explaining why the trial court erred in ruling the indemnity claim did not accrue until Silber paid the arbitration award.  (See *Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 160 ["We do not have to consider issues discussed only in a footnote"]; *Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562 [assertions raised only in a footnote may be properly "disregarded"].)

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.